# Reber's Petition.

*Constitutional law—Title of act—Amendment of act—Road jury —Act of June 23, 1911, P. L. 1123.*

1. The Act of June 23, 1911, P. L. 1123, entitled "An Act establishing in each county, a Board of Viewers; prescribing their duties; providing for their appointment as viewers, road jury, juries of view, and commissioners to view land; and providing for the charges upon the respective counties in the matter of salaries, costs and expenses thereof," does not violate Article III, Section 3 of the Constitution as containing more than one subject in its title, or as containing subjects not fairly expressed in the title.

2. Under the constitutional requirements the purpose of the title is merely to give warning to the public and to the legislators of that which may actually be found in the body of the act, so as to lead to further inquiry. It is to the contents of the statute only that the title is required to point, and not to its results.

3. The title of a statute is not to be an index of the contents of

the bill, nor include subjects indirectly affected, nor catalogue the effects of the legislation.

4. The Act of June 23, 1911, P. L. 1123, does not violate Sec. 6, Article III of the Constitution, relating to revival and amendment of acts.

5. An act which is complete in itself—the purpose, meaning and full scope of which are apparent on its face—is valid, although it may operate to alter, extend or repeal a prior act, or may provide for the means of carrying its provisions into effect by a reference to a course of procedure established by other acts of the legislature.

Argued Feb. 14, 1912. Appeals, Nos. 12 and 13, Jan. T., 1912, by Conrad S. Reber and by Berks County, from order of C. P. Berks Co., Aug. T., 1911, No. 63, appointing board of viewers In re Petition of Conrad S. Reber. Before MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ. Reversed.

Petition for the appointment of viewers.

From the record it appeared that Conrad S. Reber, the petitioner, was a property owner in the Borough of West Reading. The petition was under the Act of June 23, 1911, P. L. 1123, and prayed for the appointment of viewers to assess damages for injuries caused by a change of grade in streets in front of his property. The county of Berks was permitted to intervene and file exceptions, to the petition on the ground that the Act of June 23, 1911, was unconstitutional. The court below held that Sections 1, 2 and 3; the first and fourth paragraphs of Section 5; the first paragraph and the first sentence of the second paragraph of Section 6, and Sections 11 and 12, were constitutional, and that the remaining portions of the Act were void, particularly those portions which provided for the payment by the counties, of the salaries, costs and expenses of the board of viewers and of the viewers selected from the said board, and in those portions which provided for the making of rules and regulations by the Courts of Com-

mon Pleas of the respective counties for the government of the board.

Both Conrad S. Reber and the county of Berks appealed.

*Error assigned* was the decree of the court.

*John G. Johnson,* with him *Edward V. Trexler* and *William Kerper Stevens,* for Conrad S. Reber.—The act was constitutional in all its parts.

The title of the act sufficiently disclosed a purpose to prescribe the duties to be performed by the board of viewers acting as such or upon boards of view: Page v. Carr, 232 Pa. 371; Bridgewater Boro. v. Bridge Co., 210 Pa. 105.

The title of the act sufficiently disclosed the purpose to provide rules and regulations for the government of the board of viewers acting as a board and acting upon boards of view.

The title of the act sufficiently disclosed the purpose to impose upon counties the salaries, costs and expenses of the board of viewers acting as a board or upon boards of view.

The act was not unconstitutional because of dealing with separate subjects.

The act was not unconstitutional because it failed to provide that the board of viewers should be elected.

*Joseph R. Dickinson* and *H. Robert Mays,* for appellee.—1. The title to the act is defective in that it does not give notice, and actually misleads as to its contents, in the following particulars: (a) There is no notice of an intention to relieve the parties from burdens and place them upon the counties. (b) There is no notice of an intention to change the fees heretofore allowed to viewers. (c) There is no notice of an intention to prescribe rules and regulations for particular juries. (d) There is no notice of an intention to change the number

of viewers and their qualifications. (e) There is no notice of an intention to impose new duties upon the County Commissioners. (f) There is no notice of an intention to abridge the powers of the Courts of Quarter Sessions.

2. The act legislates concerning a multiplicity of subjects.

3. The act seeks to amend prior statutes relating to condemnation proceedings, in the following respects: (a) Changing the number of viewers. (b) Changing the qualifications of viewers. (c) Changing the place of meeting: Chestnut Hill & Spring House Turnpike Road Co. v. Montgomery County, 228 Pa. 1; Phoenixville Boro. Road, 109 Pa. 44; Ridge Ave. Pass. Ry. Co. v. Philada., 124 Pa. 219; Pittsburgh's Petition, 138 Pa. 401; Pinkerton v. Traction Co., 193 Pa. 229.

*George H. Calvert* and *Donald Thompson,* for Board of Viewers for the County of Allegheny presented a printed brief.

OPINION BY MR. JUSTICE POTTER, April 8, 1912:

Conrad S. Reber filed a petition in the Court of Common Pleas of Berks county praying for the appointment of a Board of View under the Act of June 23, 1911, P. L. 1123, to assess damages to the petitioner's premises caused by the change of grade of Penn and Sixth Avenues in West Reading. The county of Berks was allowed to intervene and become a party to the proceedings, and thereupon filed exceptions to the petition, alleging that the act under which it was filed is unconstitutional, because (1) it contains more than one subject, and (2) the subjects contained in the act are not clearly expressed in the title, and (3) the title fails to give notice of the legislative purpose and is actually misleading. These objections were sustained only in part by the learned Judge of the Court below, who held that the provisions of the act requiring the

counties to pay the compensation of the members of the Boards of Viewers, and to provide facilities for hearings, and the expense of stenographers and other costs of the proceedings, were unconstitutional. He also held void the provisions relating to procedure before the Boards, the filing of exceptions, and the taking of appeals. He sustained the validity of so much of the act as is contained in sections 1, 2 and 3, the first and fourth paragraphs of section 5, the first paragraph and the first sentence of the second paragraph of section 6, and sections 11 and 12. The portions of the act which he held to be unconstitutional were as follows: Section 4, which fixes the salary and compensation of the members of the Board of View. Part of section 5, relating to the records filed by the sub-Boards of View, and to appeals and exceptions to the actions of the Boards. The latter part of the second paragraph of section 6, requiring the rules and regulations prescribed by the Courts of Common Pleas to be followed by the Boards of Viewers. Sections 7, 8, 9 and 10 were also held to be void. Holding that what was left of the act comprised a workable scheme, capable of standing by itself, the Court below appointed a Board of Viewers as prayed for in the petition.

The county of Berks and the petitioner have each appealed from the decision, and the appeals have been argued together, and both will be disposed of in this opinion.

The question raised is whether the Act of June 23, 1911, P. L. 1123, is unconstitutional in whole or in part by reason of the insufficiency of the title. The appellant Reber contends that the act is entirely constitutional, while the appellant the County of Berks maintains that no part of the statute in question can be sustained. The constitutional provision said to be violated is section 3 of article III as follows: "No bill, except general appropriation bills, shall be passed containing

more than one subject, which shall be clearly expressed in the title."

The title of the act here in question is "An Act establishing in each county, a Board of Viewers; prescribing their duties; providing for their appointment as viewers, road juries, juries of view, and commissioners to view land; and providing for the charges upon the respective counties in the matter of salaries, costs and expenses thereof."

The provisions of sections 1, 2 and 3, which were sustained by the Court below, may be briefly stated as follows:

Section. 1. There is hereby established in each county of the Commonwealth, a Board of Viewers, consisting in counties containing over one million inhabitants of from six to nine members; and in other counties from three to nine, the number to be determined by the Judges of the Court of Common Pleas of the proper county. The qualifications of members of the Board are defined and provisions made for declaring the office vacant when a member ceases to be qualified, and for filling vacancies.

Section 2. The Judges of the Courts of Common Pleas shall appoint the members of the Board of Viewers for their respective counties. The Courts of Common Pleas shall make rules and regulations for the government and proceedings of the Boards, and may alter, amend, modify and rescind the same.

Section 3. Members of the Boards shall be appointed for three years, and may be reappointed. They may also be removed by the Courts of Common Pleas. The Judges of the Common Pleas may also fill vacancies in the Boards.

The general purpose of the statute was to create in each county a Board of Viewers from whose members a selection is to be made, to act as viewers and juries in particular cases. The manner in which this is to be done is set forth in section 5 substantially as follows: Whenever a petition is presented to any Court, Judge or

Judges, praying for the appointment of viewers, &c., the Court shall appoint a Board of View of three members from among the Board of Viewers of the county as such viewers, &c., in the particular case. The records filed by such Board, when concurred in by two of its members, shall have the same force and effect as records of the Boards of View, and exceptions taken thereto, in the same manner as under existing laws. Vacancies in Boards of View may be filled by the Court.

The title gives fair notice that a Board of Viewers is to be established in each county, whose members are to act as viewers, and upon road juries, juries of view, &c. The title is quite sufficient to give notice of any legislation properly pertaining to the rights, duties and powers of the Boards of Viewers, and of the members thereof. The intention to deal with this subject—the appointment of a Board of Viewers—thus appearing, anyone interested must look to the body of the Act to find the manner in which the subject is dealt with. Provision for attaining various objects which relate to the general subject of the bill may be dealt with by its terms, without making it subject to the charge of containing more than one subject. In the present case, the various provisions with regard to the appointment of a Board of Viewers, prescribing their duties, the compensation to be paid to them and fixing the responsibility for its payment, are all matters closely allied, and naturally to be considered together. They are all germane to the main purpose of the act. The Court below recognized the validity of the statute in so far as it empowers the Courts of Common Pleas to appoint the members of the Board of Viewers for their respective counties, but he considered the title defective in that it did not give notice that the act contained provisions regulating the procedure of the particular juries drawn from the general Board. The title expresses the purpose of the Act as being to prescribe the duties of the members of the County Boards of View.

This includes the discharge of duty as "viewers," members of "road juries," members of "juries of view" and "commissioners to view land," whenever they are so appointed. It follows, therefore, that the announcement in the title "prescribing their duties" must cover the duties discharged as members of sub-Boards as well as of the general Board. No reasonable person would be misled by the language of the title in this respect. It is difficult to regard with any degree of seriousness the suggestion that the authority given to the Courts of Common Pleas to establish rules and regulations for the guidance of the Boards of Viewers, whose members they appointed, is an infringement upon the rights and dignity of the Courts of Quarter Sessions. The chief purpose of the statute was to provide a competent and efficient piece of machinery, which when once in operation could be made available by any authority having need for its services. Once established, the membership of the Board of Viewers is to be at the service of any Court or Judge who may find it necessary to appoint viewers. It is a matter of no importance whether the rules for the guidance of the Board be promulgated by a Judge of the Court of Common Pleas or by the same individual sitting in the Court of Quarter Sessions. While these are separate and distinct Courts, yet the Judges comprising them are the same men. The notice given by the title of the purpose of the bill to establish Boards of Viewers, and to prescribe their duties naturally and fairly involves provisions for the formulation of rules and regulations for their guidance. These are to be prescribed by the Courts of Common Pleas, by whom the Boards are appointed. The fact that members of the Board, when serving as members of the sub-Boards, will act upon certain cases referred to them by the Court of Quarter Sessions cannot with any degree of accuracy or propriety be regarded as in any way subjecting the Court of Quarter Sessions to the control of the Common Pleas. As the law stood prior

to the Act of 1911, appeals from the reports of viewers, even when appointed by the Quarter Sessions, must be taken to the Common Pleas. Under the Constitution the Judges of the Common Pleas and of the Quarter Sessions are the same persons, and as said above, it seems immaterial whether they lay down rules for the viewers in one capacity or the other.

Nor do we find ourselves able to agree with the Court below in the conclusion that the title does not give requisite notice of the provisions of the act which require the counties to pay the salaries or compensation of the members of the Boards of Viewers, the expense of maintaining quarters for their accommodation and providing them with stenographers and clerical assistance, and the costs of proceedings before juries of view. The portion of the title referring to this matter is in these words, "providing for the charges upon the respective counties, in the matter of salaries, costs and expenses thereof." This language cannot be regarded as being anything but a plain indication that the bill contains provisions imposing on counties the salaries of the members of the Board, and the cost of its maintenance. It says so in plain words. It gives notice that the charges attending upon the establishing of the Board of Viewers in each county are to be placed upon the respective counties, and further specifies the particulars of the charges as being in the matter of salaries, costs and expenses thereof; that is, of the Board. Section 4 of the bill provides in substance that in counties having over one million inhabitants each member of the Board shall receive a salary of $5,000 per annum, payable out of the county treasury. In other counties each member shall receive not less than $2.00 nor more than $5.00 per day, as the Judges of each county may determine, to be paid out of the county treasury. The word salary is appropriate in the one sense, while in the other the daily compensation would properly come under the reference in the title to "costs and expenses." We think a common sense reading of the

title shows that the word "thereof" at the end refers not to the immediate antecedent, but to the subject matter of the act, the Board of Viewers, to be established in each county. It was for this Board that provision was being made. Before the passage of this act, members of boards of viewers, road juries and similar bodies were paid daily wages for the time spent in the employment. The use of the word "salaries" in the title of this act appropriately refers to the annual compensation paid to the members of the Boards of Viewers in counties containing more than a million inhabitants. It will be noted that salaries are to be paid only in those counties. In other counties, containing less than one million inhabitants, daily compensation is to be made only for each day actually and necessarily spent by each member of the Board of Viewers in the performance of the duties of his office.

It is urged that the statute in question places upon the counties a considerable burden in the way of costs and expense, which has in such proceedings heretofore been borne by the parties thereto; and it is contended that the title is therefore defective in not giving explicit notice of this change. A moment's reflection will, however, show that this criticism is in reality directed against the effect or result of the legislation. It is not the function of the title of a bill to catalogue the results which may flow from its enactment into law. These results may be many and far-reaching, and they may not even be known or anticipated to the full extent at the time of the passage of the bill. Under the constitutional requirement the purpose of the title is merely to give warning to the public and to the legislators of that which may actually be found in the body of the act, so as to lead to further inquiry. It is to the contents of the statute only that the title is required to point, and not to its results.

The Court below apparently sustained another objection, that the Act of June 23, 1911 violates section 6, article III of the Constitution, which provides "No law shall be revived, amended or the provisions thereof ex-

tended or conferred by reference to its title only, but so much thereof as is revived, amended, extended or conferred, shall be re-enacted and published at length." In this we think he was mistaken, for the act seems to come directly within the rule laid down in Greenfield Ave., 191 Pa. 290, where Mr. Justice Mitchell said (p. 296) : "An act which is complete in itself—the purpose, meaning and full scope of which are apparent on its face—is valid, although it may operate to alter, extend or repeal a prior act or may provide for the means of carrying its provisions into effect by a reference to a course of procedure established by other acts of the legislature." The same principle was again stated in Gilbert's Estate, 227 Pa. 648, where Mr. Justice ELKIN said (p. 651) : "An act complete in itself, which applies an established method of procedure, whether it be by common law, or statute, or joint operation of both, to a new class by general reference only, does not violate the constitutional provision as to republication, though it may operate to some extent as an extension of a previous statute." See also Clarion County v. Clarion Township, 222 Pa. 350. The meaning of the statute under consideration is plain; it establishes a new system and is complete within itself in so far as its scope extends, and it needs the aid of no other statute to give it effect.

With the wisdom or desirability of the legislation we have nothing to do. Evidently it was felt that there was need of improvement in the character of the work done by viewers in estimating damages caused by the exercise of the power of eminent domain. The legislature has endeavored to meet this need by providing a system in which jurors and members of boards of view, through permanent appointment, may gain the knowledge and experience in dealing with these questions which will yield better results. If the method prescribed does not work well, or if the imposition of the costs of maintaining the system upon the counties shall prove to be burdensome or unjust, the remedy is to be sought from

the legislature. Objections based upon such grounds are not for the proper consideration of the courts.

Bearing in mind that the title is not be an index of the contents of the bill, that it need not include subjects indirectly affected, and that it is not to be a catalogue of the effects of the legislation, we have examined the act in question, section by section, and do not find in it anything to which in the proper constitutional sense, the title does not fairly point, or which may not reasonably be considered as germane to that which is fairly indicated in the title. We therefore hold that the statute as a whole is constitutional.

The assignments of error in the appeal of Conrad S. Reber at No. 12 January Term, 1912 are sustained. The assignments of error in the appeal of the County of Berks at No. 13 January Term, 1912, are overruled, and the judgment of the court below, in so far as it holds any part of the act in question to be unconstitutional, is reversed.