Commonwealth ex rel. Kelley *v.* Cantrell et al.

Argued June 17, 1937. Before KEPHART, C. J., SCHAF-
FER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Walter Biddle Saul,* with him *Joseph D. Burke* and
*Michael J. McManus,* for relator.

*Robert T. McCracken,* with him *Laurence H. Eld-
redge, Warwick Potter Scott* and *William T. Connor,*
for respondents.

OPINION BY MR. JUSTICE BARNES, July 7, 1937:

This proceeding by action of quo warranto challenges
the constitutionality of the Act of April 28, 1937 (Act
No. 109), which abolishes the Board of Viewers of coun-
ties of the first class of the Commonwealth, and substi-
tutes therefor a board of viewers to be appointed from
among the members of the Board of Revision of Taxes
of such counties. The question here involved, stated
more precisely, is whether this Act of April 28, 1937,
P. L. 473, validly amends five sections (1 to 5 inclusive)
of the Act of June 23, 1911, P. L. 1123. The relevant
provisions of these Acts of Assembly are considered in
the following discussion.

The action was instituted at the relation of the Dis-
trict Attorney of Philadelphia County. In the sugges-
tion for the writ filed in the court below, it is recited
that the six respondents* named herein held office as

---

* The respondents named in the suggestion for the writ are:
Francis S. Cantrell, Jr., Fred W. Willard, Robert B. Scott, John

members of the Board of Viewers of Philadelphia County at the time of the passage of the Act of April 28, 1937; that they alone are performing the duties of such office, claiming to be the properly constituted members of the Board; it informs the court that a writ of quo warranto should issue against the respondents, individually and as members of the Board, to show by what authority they hold office.

Following the issuance of the writ on June 15, 1937, the respondents filed an answer admitting the factual averments of the suggestion, but denying the constitutionality of the legislation in question. On the same day the relator presented a petition to this Court praying that a writ of special certiorari issue to bring up the record, for the purpose of having the constitutional questions in controversy determined in the first instance by this Court. No decision having been rendered by the court below, and in view of the importance of the questions involved, the order for a special certiorari was made by this Court on June 15, 1937. Hence the matter is now before us upon a record composed only of the pleadings.

The courts of the Commonwealth from an early date have been empowered by various Acts of Assembly to appoint bodies (under such designations as viewers, road juries, juries of view, commissioners to view land) to ascertain the extent of the injuries inflicted upon private property by the taking of lands for public purposes.

The statutes authorizing such appointments did not prescribe a uniformity in the procedure to be followed by the viewers, nor did they fix their number or qualifications. Hence there were variations in the method of procedure adopted in the various counties of the state. Usually the court named three viewers who were freeholders of the county, but such appointments were

J. Green, Chas. J. W. Kreuzer, and J. Louis Breitinger, individually, and as Members of the Board of Viewers of Philadelphia County.

merely casual ones, without regard to experience or qualifications.[1]

The system in force was completely altered by the Act of June 23, 1911, P. L. 1123, which established for the first time in each county a permanent Board of Viewers. The Act of 1911 is general in its scope. It provides in Section 1 for the qualifications of viewers; in Section 2 for their appointment by the judges of the courts of Common Pleas in the respective counties; in Section 3 for a term of office of three years, subject to the power of the court which made the appointment to remove members for cause at any time; in Section 4 for the compensation to be paid the viewers; in Section 5 that upon petition for viewers, "the court shall appoint a board of view of three members—one of whom shall be learned in the law—from among the board of viewers of the county, . . ." Subsequent sections of the Act specify the duties of such boards of view, with respect to public hearings, the reports of their findings, and of the damages or benefits assessed. It is provided that rules and regulations governing procedure, and for exceptions and appeals from the action of the board of view, be adopted.

In describing generally the intent of this legislation, Mr. Justice POTTER, in *Reber's Petition*, 235 Pa. 622, said (p. 629) : "The chief purpose of the statute was to provide a competent and efficient piece of machinery, which when once in operation could be made available by any authority having need for its services. Once established, the membership of the Board of Viewers is to be at the service of any court or judge who may find it necessary to appoint viewers."

The Act of 1937 amends Section 5 of the Act of 1911 by adding to the section the following clause: *"Pro-*

---

[1] See *Com. ex rel. v. Cunningham*, 21 D. R. 219, 220; *Road in Columbus Twp.*, Id. 29, 30; *Reber's Petition*, Id. 4; reversed in 235 Pa. 622.

*vided, That in counties of the first class such board of view shall be appointed from among the board of revision of taxes of such county."* It abolishes the board of viewers in counties of the first class, and repeals the first four sections of the Act of 1911 in so far as they apply to counties of the first class.[2]

Thus it appears that, by the Act of 1937, in counties of the first class the courts are limited in the selection of "Boards of View," not as heretofore to the personnel of the "Board of Viewers," but to the personnel of the "Board of Revision of Taxes."

The respondents assert that the Act of 1937 is unconstitutional for the following reasons: (1) It violates Article V, Section 1 of the Constitution of Pennsylvania as an invasion of the judicial power; (2) it conflicts with Article III, Section 7 and Article V, Section 26 prohibiting the General Assembly from enacting local or special laws regulating the practice or jurisdiction of the courts, and requiring the laws relating to courts to be general and of uniform operation; (3) it offends Article I, Section 11 because it will result in the denial or delay of right and justice guaranteed to every citizen by this provision of the Constitution.

The first question is whether this legislation infringes the judicial power[3] of the courts over persons perform-

---

[2] Section 5 of the Act of 1911, as amended by the Act of 1937, reads: "Whenever hereafter a petition shall be presented to any court, judge or judges of this Commonwealth, praying the appointment of viewers, reviewers or re-reviewers, or of a jury of view, or of a road jury, or of commissioners of view . . . the court shall appoint a board of view of three members—one of whom shall be learned in the law—from among the board of viewers of the county, as such viewers, reviewers, re-reviewers, or jury of view, or road jury, or commissioners of view, *PROVIDED That in counties of the first class such board of view shall be appointed from among the members of the board of revision of taxes of such county."*

[3] Article V. Section 1. Judicial Power. "The judicial power of this Commonwealth shall be vested in a Supreme Court, in courts of common pleas, courts of oyer and terminer and general

ing functions in connection with judicial proceedings. It is contended that, by restricting the class from which viewers may be appointed, the courts are prevented from exercising their judicial function of selection and control of triers of fact. The same argument was made when the constitutionality of the Act of 1911 was contested. In *Reber's Petition,* supra, that statute was attacked on the ground, inter alia, that the province of the judiciary was invaded by the limitation which was imposed upon the selection of road jurors. The objection was overruled by the trial court and was not raised on appeal. In dismissing the contention, Judge ENDLICH, whose opinion for the court below is reported in 21 Dist. Rep. 4, said, (p. 7) : "Whether in this respect the mode heretofore pursued of appointing juries of view from the whole body of electors, freeholders, etc., be a wiser one or not than their selection from a small standing body of men set apart for that purpose, and by their frequent service and increasing familiarity with all it concerns supposed likely to become experts in such matters, it cannot be denied that the legislature has the power of determining that question and ordaining which mode shall be followed."

In this connection it must be borne in mind that the remedy by proceedings before a board of view, is wholly statutory: *Locust-Broad-Eighth Street Subway Cases,* 319 Pa. 161. As we there said (p. 165), "The basic question is whether there is a remedy by the board of view procedure. As such remedy is not in the course of the common law, we look to the statutes to see whether it has been provided."

The Board of View is purely a creature of statute. Therefore the legislature possesses unlimited power to prescribe the conditions under which that remedy shall be enjoyed, and the rules and regulations incidental to

jail delivery, courts of quarter sessions of the peace, orphans' courts, magistrates' courts, and in such other courts as the General Assembly may from time to time establish."

its exercise, without invading in any respect the domain of judicial power. If the legislature may say, as it frequently has in the past without successful challenge, that the selection of the members of the jury of view shall be made from electors only, or from freeholders only, or from electors resident in the immediate vicinity of the lands, or from a small body of citizens, it may validly impose further restrictions upon the class of citizens from which the selection of the jury is to be made.

However, it is not in derogation of the judicial power to prescribe that persons appointed by the courts to pass upon certain questions of fact shall be designated from an established and experienced panel of experts, particularly qualified to determine such questions. It was this consideration, apparently, which was a motivating force behind the passage of the Act of 1911. As we said in *Reber's Petition,* supra (p. 632) : "Evidently it was felt that there was need of improvement in the character of work done by viewers in estimating damages caused by the exercise of the power of eminent domain. The legislature has endeavored to meet this need by providing a system in which jurors and members of boards of view, through permanent appointment, may gain the knowledge and experience in dealing with these questions which will yield better results."

Under the Act of 1911 the choice which a court might exercise in appointing a board of view was restricted to the Board of Viewers of the county, which consisted of not more than nine members.[4] In Philadelphia County there are at present six members of the Board of Viewers. By the Act of 1937 this choice is limited

---

[4] In counties containing over one million inhabitants, the Board of Viewers shall consist of not less than six nor more than nine members. In each county containing less than one million inhabitants, the board shall consist of not less than three nor more than nine members. See Section 1 of the Act of June 23, 1911, P. L. 1123.

to the seven members of the Board for Revision of Taxes.[5] We cannot agree that this change works any unconstitutional impairment of the power of the courts freely to exercise their judicial functions. With the wisdom or desirability of the legislation now under attack, we are not concerned. It is not for us to determine that the members of the Board of Revision of Taxes are not as well qualified to serve as viewers as the members of the Board of Viewers.

The respondents argue that the "members of the board of revision of taxes, must first, as assessors, determine the value of all real estate for purposes of taxation, . . . Later, as boards of view, they will sit in judgment upon the opinions they have already formed and expressed as to that value." They contend that the board will become so biased that the appointment of viewers from among its number amounts to the denial of a fair and impartial trial. It is unconstitutional, they assert, for public officers who have made the appraisement of property for taxation purposes, to determine the value of the same property in a condemnation proceeding to which the county is a party in interest. This argument is based upon a false premise. Respondents assume that the hearing before the Board of View is in the nature of a trial, which must be surrounded with fundamental guarantees of impartiality, without which there is a denial of due process of law. Such is not the case. The functions of a board of view are not juridical.

The Board of Viewers is not part of the judicial system of the Commonwealth, nor is the procedure established by it necessary to the realization of the right to compensation upon the taking of private property, as guaranteed to a property owner by the Constitution of

---

[5] By the provisions of the Act of April 28, 1937, P. L. 476, the Board of Revision of Taxes, after the first day of May, 1937, shall consist of seven members. In an opinion by Mr. Chief Justice KEPHART, *Suermann v. Hadley, Treasurer,* 327 Pa. 190, the constitutionality of this Act is sustained.

Pennsylvania. Proceedings before it are merely a *preliminary step,* provided by statute to ascertain the damages and to afford a report or estimate which may be the basis for an agreement between the condemning body and the property owner, fixing the damages to be paid. It saves in many instances the time and expense of a jury trial. The property owner, however, is not concluded by this report, but is entitled as a matter of right, secured to him by the Constitution, to demand that his claim be heard by a court and jury. He is thus protected from any bias or prejudice on the part of the board, before which his case was preliminarily presented. Where the right to a jury trial to assess damages for the taking of property is not denied, due process of law is not infringed.

Let us examine briefly the constitutional guarantee of compensation to an owner in such case, and his right to have that compensation fixed by a jury. Article XVI, Section 8, says: "Municipal and other corporations and individuals invested with the privilege of taking private property for public use shall make just compensation for property taken, injured or destroyed. . . . The General Assembly is hereby prohibited from depriving any person of an appeal from any preliminary assessment of damages against any such corporations or individuals made by viewers or otherwise; and the amount of such damages in all cases of appeal shall on the demand of either party be determined by a jury according to the course of the common law."

The important provision in this section of the Constitution is that either party to the proceedings, if dissatisfied with the "preliminary assessment," may demand a trial by a common law jury. This right to a trial by a common law jury is vital upon the point we are now considering. The prohibition imposed upon the legislature is that it shall not interfere with the property owner's right to appeal to the court, and there to have a jury trial. The hearings held before a board of

view obviously do not constitute the jury trial thus guaranteed by the Constitution.

This right has not, in any way, been denied or impaired by the Act of 1937.[6]  On the contrary, it has been preserved by the Act in the fullest sense in which it was theretofore enjoyed by the citizens.  Accordingly, there is no merit in the contention of the respondents that the Act constitutes an invasion of due process under our organic law.

Moreover it would seem that Article XVI, Section 8 of the Constitution by its terms empowers the legislature to provide that the preliminary assessment be made by a body other than the Board of Viewers.  It was for this purpose that the words "or otherwise" were inserted after the word "viewers."  It is argued that the use of that phrase empowers the legislature to abolish the viewers entirely.  In consequence, it is said, if it has the power to abolish the viewers, it has the power to limit, change or alter their qualifications, and to provide a new and different manner for their appointment.

In other jurisdictions where this question has arisen it has been uniformly held that due process is not breached by the fact that an inferior tribunal designated to assess compensation in eminent domain proceedings is a branch of the governmental agency concerned, so long as the right of the individual property owner to appeal to the courts is preserved: *Uihlein v. St. Paul,*

---

[6] In Section 5 of the Act of 1937, there is incorporated the identical provision for appeals as is employed in the same Section of the Act of 1911, viz.: *"Appeals from the action of any board of view and exceptions thereto shall be taken and filed in the same manner and with like force and effect as under existing laws."*

Also, according to this provision there is read into the Act of 1937, Section 10 of the Act of 1911, reading as follows: "The proceedings by way of exception, appeal, and otherwise, upon filing of reports of said board of view, shall be in all respects the same as those provided under existing laws in the case of appeals from viewers, reviewers, re-reviewers, juries of view, road juries, or commissioners of view."

32 Fed. (2nd) 748, cert. denied 281 U. S. 726; *Thomson v. New Haven,* 100 Conn. 604; *Drainage Dist. v. Extension Ditch Co.,* 32 Idaho 314; *Re: Third Street,* 177 Minn. 146; *Wilburn v. Raines,* 111 Va. 334; *George v. Consol. Lighting Co.,* 87 Vt. 411. See also 74 A. L. R. 569.

It is contended that the Act before us is in violation of Article III, Section 7,[7] prohibiting the passage of special and local legislation, and of Article V, Section 26[8] requiring that all laws relating to courts shall be general and of uniform operation. It is pointed out that the effect of the Act is to provide that boards of view in Philadelphia County—the only county of the first class—shall henceforth be appointed from the Board of Revision of Taxes, whereas in all other counties of the Commonwealth they are appointed from a Board of Viewers previously appointed by the judges of the common pleas courts. Respondents argue that there is no reasonable basis for this classification, and that it is unconstitutional, citing in support of their contention *Ruan Street,* 132 Pa. 257; *Wyoming Street,* 137 Pa. 494; *Pittsburgh's Petition,* 138 Pa. 401; *Woodland Avenue,* 178 Pa. 325.

In these cases we held unconstitutional certain statutes relating to procedure in eminent domain in cities of the first and second classes, as special legislation. All

---

[7] Article III. Section 7. Special and local legislation limited. "The general assembly shall not pass any local or special law. . . . Regulating the practice or jurisdiction of, or changing the rules of evidence in, any judicial proceeding or inquiry before courts, . . . or other tribunals, . . . Nor shall the General Assembly indirectly enact such special or local law by the partial repeal of a general law; . . ."

[8] Article V. Section 26. Uniform laws for courts; certain courts prohibited. "All laws relating to courts shall be general and of uniform operation, and the organization, jurisdiction and powers of all courts of the same class or grade, so far as regulated by law, and the force and effect of the process and judgments of such courts, shall be uniform; . . ."

of these cases, however, were decided prior to the adoption of the amendment of November 6, 1923, Article III, Section 34, of the Constitution. This amendment specifically provides that "The legislature shall have power to classify counties, cities, boroughs, school districts, and townships, according to population, and all laws passed relating to each class, and all laws passed relating to and regulating procedure and proceedings, in court with reference to any class, shall be deemed general legislation within the meaning of this Constitution." It seems to us that this amendment affords a complete answer to respondents' contention. The cases cited, having been decided prior to 1923, are not now in point: *Tranter v. Allegheny Co. Authority,* 316 Pa. 65, 77; *Retirement Board v. McGovern,* 316 Pa. 161, 166. See also *Com. v. Wert,* 282 Pa. 575, 581, and *Sambor v. Hadley,* 291 Pa. 395, 406.

The amendment of 1923 does not make valid any classification which the legislature may adopt as a subterfuge to achieve by indirection an end forbidden by the Constitution; there must be a substantial and valid basis for the classification adopted: *Upper Merion Twp. v. Bridgeport Boro.,* 299 Pa. 297. There can be no doubt, however, that it is entirely proper to differentiate between counties of the first class and other counties with lesser population, with respect to the qualifications of persons appointed to serve on boards of view. This distinction was recognized in the Act of 1911, which respondents contend is still the law. In Section 1 of that Act different qualifications are prescribed for members of boards of view in counties having a population in excess of one million than for those of smaller population. Classification is primarily a legislative question. For us to hold invalid the classification adopted in the Act before us would be to disregard completely the amendment of 1923, which was adopted in order to permit the enactment of legislation such as this—framed to meet the conditions peculiar to one of the classes of

counties of the Commonwealth. It is apparent that the questions arising in eminent domain proceedings may be different in counties almost entirely urban than in those which are rural, or suburban in character.

Finally it is asserted that the Act of 1937 will, in its operation, offend the provisions of Article I, Section 11.[9] Respondents claim that it will be impossible for members of the Board of Revision to perform additionally the duties of juries of view without such inordinate delay as will amount to a denial of justice. It is pointed out that the Board of Revision of Taxes of Philadelphia consists of seven members, whose duty it is to make a triennial assessment of each of the many parcels of land within the county, and in addition to assess for taxation all personal property therein. This, respondents argue, in itself is an extremely heavy burden, and the members of the Board will not be able to perform promptly the further duties laid upon them by this statute. There is little merit in this contention. While it would seem that the legislature has seen fit to place extremely heavy duties upon the Board of Revision in counties of the first class, we cannot judicially determine that it will be impossible for members composing this Board to perform expeditiously these duties.

We have considered the various objections to the constitutionality of the Act of 1937. We have given full weight to all the reasons assigned as grounds for declaring the invalidity of this statute, in the brief of the learned counsel, who acted as amici curiæ. The conclusion we have reached is that the method of appointing persons to a Board of View, or whether or not there shall be a Board of Viewers, in connection with the exercise of the power of eminent domain, is a question for the legislature to determine, according to its sovereign will.

[9] Article I. Section 11: "All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law and right and justice administered without sale, denial or delay. . . ."

It is subject only to the right of a property owner to appeal to the court, and there to have a trial by a common law jury to determine the amount of his damages. As the Act in question preserves these constitutional rights to the property owner, and as no other provision of the Constitution is contravened, which is here brought to our attention, the Act must be held valid.

Judgment is entered in favor of the Commonwealth, and a judgment of ouster is entered against the respondents, Francis S. Cantrell, Jr., Fred W. Willard, Robert B. Scott, John J. Green, Chas. J. W. Kreuzer, and J. Louis Breitinger, Individually and as Members of the Board of Viewers of Philadelphia County. Respondents to pay the costs.