IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Allegheny County | : | |
| | : | |
| v. | : | No. 1469 C.D. 2021 |
| | : | |
| Brittany Hailer and Pittsburgh | : | |
| Current, | : | |
| Appellants | : | Argued: May 10, 2023 |

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE ELLEN CEISLER, Judge
                HONORABLE STACY WALLACE, Judge

OPINION BY JUDGE CEISLER                FILED: July 11, 2023

Brittany Hailer (Hailer) and Pittsburgh Current (collectively, Requesters), appeal from the December 1, 2021 order of the Allegheny County (County) Court of Common Pleas (trial court), which reversed a March 31, 2021 Final Determination by the Pennsylvania Office of Open Records (OOR) that Requesters were entitled to autopsy and toxicology records possessed by the County Office of the Medical Examiner. The trial court held that, pursuant to Section 708(b)(20) of the Right-to-Know Law (RTKL)[1] and Section 1252-B of The County Code (Code),

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. § 67.708(b)(20). Section 708(b)(20) of the RTKL provides, in part, that the autopsy records of a coroner or medical examiner are exempt from disclosure; however, Section 708(b)(20) permits the release of the deceased individual's name and the cause and manner of death.

in what is commonly known as the Coroner's Act,[2] the requested records were only available to nongovernmental agencies seeking information for the purpose of investigating an insurance claim or determining liability for the death of a decedent. After review, we reverse the trial court and direct the County to produce the requested records.

## I. Background

Under Section 305 of the RTKL,[3] records in possession of a Commonwealth agency are presumed to be public unless they are exempt under Section 708 of the RTKL,[4] protected by a privilege, or exempt under any other federal or state law or regulation or judicial order or decree. Section 708(b)(20) of the RTKL, 65 P.S. § 67.708(b)(20), exempts from disclosure a coroner's autopsy records, including audiotapes, photographs, and video recordings. The name of the deceased and the cause and manner of his or her death may be reported. The RTKL "**shall not apply**[,]" however, when any of its provisions regarding access conflict with any

---

[2] Act of August 9, 1955, P.L. 323, *as amended*, added by the Act of October 24, 2018, P.L. 931, No. 154 (Act 154), 16 P.S. § 1252-B. Section 1252-B of the Coroner's Act relevantly mandates that

> **[t]he coroner shall charge and collect** a fee of $500 for an autopsy report, $100 for a toxicology report, $100 for an inquisition or coroner's report, $50 for a cremation or disposition authorization and other **fees as may be established** from time to time **for other reports or documents requested by nongovernmental agencies in order to investigate a claim asserted under a policy of insurance or to determine liability for the death of the deceased**.

16 P.S. § 1252-B (emphasis added). The Coroner's Act is found in Article XII-B of the Code.

[3] 65 P.S. § 67.305.

[4] 65 P.S. § 67.708.

other federal or state law.[5]   Therefore, Section 708(b)(20) of the RTKL restricts access to a coroner's autopsy records, unless access is otherwise provided by law.

Access to a coroner's records is otherwise provided for under Section 1252-B of the Coroner's Act, which states that the coroner "shall charge and collect" a fee, as specified, for providing an autopsy report, toxicology report, inquisition or coroner's report, and cremation or disposition authorization, as well as "**other fees as may be established** from time to time **for other reports or documents requested by nongovernmental agencies in order to investigate a claim asserted under a policy of insurance or to determine liability for the death of the deceased** . . . . 16 P.S. § 1252-B (emphasis added).

On December 23, 2020, Requesters submitted a RTKL request (Request) to the County, seeking "the Autopsy/External Examination and Toxicology Report for Daniel A. Pastorek," who died while in the custody of the County Jail.  Reproduced Record (R.R.) at 15a.  Jerry Tyskiewicz, the County's open records officer (ORO), denied the Request, citing Section 708(b)(20) of the RTKL.  *Id.* at 16a.  As permitted by Section 708(b)(20) of the RTKL, the County provided Requesters the cause and manner of Mr. Pastorek's death.  *Id.* at 107a.

Requesters appealed to the OOR, which granted their appeal after concluding that the requested records were accessible upon payment of the appropriate fee, as set forth in Section 1252-B of the Coroner's Act.  *Id.* at 5a.  The OOR also relied on *Hearst Television, Inc. v. Norris*, 54 A.3d 23 (Pa. 2012), in which our Supreme Court held that the Coroner's Act did not grant a coroner discretion over the release of

---

[5] Section 3101.1 of the RTKL, 65 P.S. § 67.3101.1 (emphasis added).

3

records.[6] Accordingly, the OOR directed that the County produce the records sought in the Request. *Id.* at 6a.

The County filed a petition for review (PFR) with the trial court, arguing that the requested records constituted coroner records that were exempt from disclosure under Section 708(b)(20) of the RTKL.[7] The County also argued that Section 1252-B of the Coroner's Act only permitted disclosure of coroner records if requested by a nongovernmental agency seeking information for the purpose of investigating an insurance claim or determining liability for the death of a decedent. *Id.* at 11a-12a. In support of their position, Requesters submitted an affidavit from Hailer, an investigative reporter, who advised that the Request was filed as part of her research

---

[6] In rendering its decision, the *Hearst* Court reviewed former Sections 1236.1(c) and 1251 of the Coroner's Act. Former Section 1236.1(c) of the Coroner's Act, added by the Act of November 29, 1990, P.L. 602, *formerly* 16 P.S. § 1236.1(c), which Act 154 repealed, relevantly provided as follows:

> (c) The coroner may charge and collect a fee of up to one hundred dollars ($100) for each autopsy report, up to fifty dollars ($50) for each toxicology report, up to fifty dollars ($50) for each inquisition or coroner's report and such other fees as may be established from time to time for other reports and documents requested by nongovernmental agencies.

Former Section 1251 of the Coroner's Act, also repealed by Act 154, required every coroner to deposit all "official records and papers for the preceding year in the [O]ffice of the [P]rothonotary for the inspection of all persons interested therein." *Formerly* 16 P.S. § 1251. The *Hearst* Court reasoned that former Section 1251 required the deposit of all official coroner records and papers with the prothonotary within 30 days after the end of each year "for the interest of all persons interested therein." *Hearst*, 54 A.3d at 25. For those unwilling to wait until after the end of the year, former Section 1236.1(c) established a fee schedule for obtaining the same records. *Id.* at 33.

[7] The County also argued the records were exempt under Section 708(b)(17) of the RTKL as records relating to an agency's non-criminal investigation. 65 P.S. § 67.708(b)(17). Disclosure under Section 708(b)(17) is not an issue before the Court.

4

into whether conditions at the County Jail contributed to Mr. Pastorek's death. *Id.* at 167a.

The trial court reversed the OOR in an order and opinion issued on December 1, 2021. Original Record (O.R.), Item No. 1 at 6. The trial court disagreed that *Hearst* controlled its disposition, as the *Hearst* Court analyzed statutory provisions that were repealed when Section 1252-B of the Coroner's Act was enacted by Act 154. *Id.* at 5. Instead, the trial court relied on Section 1252-B, which mandates that

> **[t]he coroner shall charge and collect a fee** of $500 for an autopsy report, $100 for a toxicology report, $100 for an inquisition or coroner's report, $50 for a cremation or disposition authorization and other fees as may be established from time to time **for other reports or documents requested by nongovernmental agencies in order to investigate a claim asserted under a policy of insurance or to determine liability for the death of the deceased**.

16 P.S. § 1252-B (emphasis added).

The trial court narrowly construed the bolded language above to require that a coroner exercise discretion in determining whether anyone seeking coroner records was a nongovernmental agency and whether the information sought was for the purpose of investigating an insurance claim or determining liability for the death of the deceased. O.R., Item No. 1 at 4. Therefore, Requesters were only entitled to the records at issue if they qualified as a nongovernmental agency seeking to determine liability for the death of the deceased; otherwise, the trial court reasoned that anyone "with a good cause" would be entitled to access information about a death.[8] *Id.* The trial court opined that a determination of liability for an individual's death was an issue that was typically decided by a court. *Id.* Hailer's work, although "a laudable

---

[8] The trial court noted that Requesters had not asserted they were investigating an insurance claim. O.R., Item No. 1 at 3.

5

activity," did not encompass such a "legal process[.]"  Accordingly, the trial court granted the County's PFR.  *Id.* at 6.  This appeal followed.[9]

## II. Issues

On appeal, Requesters argue that the trial court misapplied Section 1252-B of the Coroner's Act and misconstrued the Supreme Court's holding in *Hearst*.[10]

## III.    Discussion

Requesters argue that the trial court erred in concluding that they were not entitled to the coroner records for Mr. Pastorek because Hailer's journalistic research did not implicate the legal process of determining liability for his death.  The trial court further erred in concluding that Section 1252-B of the Coroner's Act grants a coroner the discretion to determine a nongovernmental agency's entitlement to

---

[9] Our review of the trial court's decision is limited to whether the findings of fact are supported by competent evidence, whether the trial court committed an error of law, or whether the trial court abused its discretion in reaching a decision.  *In re Right to Know Law Request Served on Venango Cnty.'s Tourism Promotion Agency & Lead Econ. Dev. Agency*, 83 A.3d 1101, 1104 n.3 (Pa. Cmwlth. 2014).

[10] Amicus Pennsylvania State Coroner's Association (PSCA) filed a brief in support of the trial court's decision, arguing that release of the requested records is governed by the Public Access Policy of the Unified Judicial System (UJS Policy), found at 204 Pa. Code § 213.81.  The PSCA also argues that the records at issue implicate Section 1320d-6 of the Health Insurance Portability and Accountability Act of 1996 (HIPAA), 42 U.S.C. § 1320d-6, and that Section 1236-B of the Code, added by Act 154 does not require disclosure of all records maintained by a coroner.  We decline to address these contentions, as neither party raised an issue regarding the UJS Policy or HIPAA, and the County expressly denied that Section 1236-B applied in the instant matter.  Amicus briefs cannot raise issues not set forth by the parties.  *Banfield v. Cortes*, 110 A.3d 155, 172 n.14 (Pa. 2015).

Amicus briefs were also filed in support of Requesters by the Abolitionist Law Center and the Pennsylvania Institutional Law Project, and by the Pennsylvania Newsmedia Association and the Cornell Law School First Amendment Clinic, which largely address the public policy considerations favoring disclosure and which reject the trial court's interpretation of Section 1252-B of the Code.  We will consider these arguments to the extent they address issues already raised by the parties.

6

autopsy and toxicology reports. Requesters acknowledge that the language in Section 1252-B of the Coroner's Act differs from that of its precursor, former Section 1236.1(c), which did not contain language regarding insurance claims or determinations of liability for the death of a decedent. Requesters maintain, however, that inclusion of such language in Section 1252-B of the Coroner's Act does not reflect an intention by the General Assembly (GA) to limit the types of requesters that may access coroner records, or the purposes for which requesters may seek such records.

"The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the [GA]." 1 Pa.C.S. § 1921(a). In the absence of a demonstrated constitutional infirmity, courts must generally apply the plain terms of a statute, as written. *Lower Swatara Twp. v. Pa. Lab. Rels. Bd.*, 208 A.3d 521, 530 (Pa. Cmwlth. 2019). Where the plain language in a statute is unambiguous, we must apply that language "without employing familiar canons of construction and without considering legislative intent." *Dubose v. Quinlan*, 173 A.3d 634, 643 (Pa. 2017). The plainness or ambiguity of statutory language is determined by reference to the language itself, as well as the specific context in which the language is used and the broader context of the statute as a whole. *Roethlein v. Portnoff Law Assocs., Ltd.*, 81 A.3d 816, 822 (Pa. 2013). We must not interpret statutory words in isolation but must read them with reference to the context in which they appear. *Id.* Moreover, we must presume that the GA "does not intend a result that is absurd, impossible of execution[,] or unreasonable." 1 Pa.C.S. § 1922(1).

Having reviewed the language of Section 1252-B and having considered the context in which Section 1252-B appears in the Coroner's Act, we need not reach beyond the plain text of the statute to dispose of Requesters' appeal. Section 1252-

B is, essentially, a fee schedule that establishes the costs to be collected for coroner reports.[11]  The coroner "shall charge and collect" the fee designated for autopsy reports, toxicology reports, inquisitions or coroner's reports, and cremation or disposition authorizations.  The coroner "shall charge and collect" other fees, as established, for "reports and documents requested by nongovernmental agencies in order to investigate a claim asserted under a policy of insurance or to determine liability for the death of the deceased."[12]  Section 1252-B does not limit the receipt of coroner records to nongovernmental agencies seeking records for the purpose of investigating insurance claims or determining liability for the death of a decedent.  Rather, Section 1252-B requires that a coroner shall also "charge and collect" other fees that have been established for nongovernmental agency requests relating to those discrete types of inquiries.

Our conclusion also finds support in the language of Section 1236-B of the Coroner's Act, as coroner records and papers in counties of the third through eighth class are publicly accessible "within 30 days after the end of each year" following the deposit of such records "in the Office of the Prothonotary for the inspection of all persons interested therein."  16 P.S. § 1236-B.  Section 102(a) of the Code relevantly provides that its provisions do not apply to counties of the first and second class, "[e]xcept . . . as provided in . . . Article XII-B[, the Coroner's Act.]"  16 P.S. § 102(a).  Based on its population, the County is a second-class county, and the only

---

[11] The subchapter in which Section 1252-B appears contains one other statutory provision, Section 1251-B, which governs the right of a coroner to recover costs following the disposition of a deceased at county expense.  Added by Act 154, 16 P.S. § 1251-B.

[12] 16 P.S. § 1252-B.

county classified as such.[13] Philadelphia County is a first-class county.[14] Accepting the conclusions of the trial court would lead to the absurd result that a requester could receive autopsy records located anywhere in the Commonwealth, unless those records are located in the County or Philadelphia County. In the latter circumstance, only a nongovernmental agency investigating an insurance claim or determining liability for a decedent's death is permitted access to coroner records. There is no language in the RTKL or the Coroner's Act to suggest that access to certain public records depends on the county class in which the records are located.

Indeed, a review of Section 1252-B's legislative history, while unnecessary given the plain language of the statute, lends further support to our conclusion that access to coroner records is not limited to the circumstances delineated by the trial court. The language of Section 1252-B of the Coroner's Act was contained within Section 22 of Senate Bill 1005 (SB 1005), which ultimately became Act 154. Earlier drafts of SB 1005 would have explicitly provided that Section 1252-B did not authorize disclosure of any record exempt from public access under the RTKL.[15] This language was struck from subsequent versions of SB 1005,[16] a strong indicator

---

[13] Section 210(2) of the Code, 16 P.S. § 210(2); *DeFazio v. Civ. Serv. Comm'n of Allegheny Cnty.*, 756 A.2s 1103 (Pa. 2000).

[14] Section 210(1) of the Code, 16 P.S. § 210(1); *Lohr v. Saratoga Partners, L.P.*, 238 A.3d 1198, 1200 (Pa. 2020).

[15] *See* Senate Bill 1005, Printer's No. 1782, at 85-86, May 22, 2018.
https://www.legis.state.pa.us/cfdocs/legis/PN/Public/btCheck.cfm?txtType=PDF&sessYr=2017&sessInd=0&billBody=S&billTyp=B&billNbr=1005&pn=1782 (emphasis added) (last visited July 10, 2023).

[16] *See* Senate Bill No. 1005, Printer's No. 2026, September 25, 2018.
https://www.legis.state.pa.us/cfdocs/legis/PN/Public/btCheck.cfm?txtType=PDF&sessYr=2017&sessInd=0&billBody=S&billTyp=B&billNbr=1005&pn=2026 (last visited July 10,
**(Footnote continued on next page…)**

9

that the General Assembly intended that coroner records would be publicly accessible, provided the appropriate fee was paid.

Based on the above analysis, we conclude that the trial court erred in reversing the OOR, as production of the records sought by Requesters only requires payment of the fees set forth in Section 1252-B of the Coroner's Act. Given our disposition of this issue, we need not address the continued viability of *Hearst.* Accordingly, we reverse the order of the trial court and direct that the County produce records responsive to the Request.

_____
ELLEN CEISLER, Judge

---

2023). Act 154 also enacted Section 1236-B of the Code, 16 P.S. § 1236-B. Earlier drafts of Section 1236-B provided, in relevant part, that "[e]xcept as provided under this article, public disclosure of a coroner record shall be in accordance with the [RTKL.]" *See* Senate Bill 1005, Printer's No. 1782, at 84, May 22, 2018.
https://www.legis.state.pa.us/cfdocs/legis/PN/Public/btCheck.cfm?txtType=PDF&sessYr =2017&sessInd=0&billBody=S&billTyp=B&billNbr=1005&pn=1782 (emphasis added) (last viewed July 10, 2023). This language was deleted and replaced with the current text of Section 1236-B.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Allegheny County                    :
                                    :
            v.                      :   No. 1469 C.D. 2021
                                    :
Brittany Hailer and Pittsburgh      :
Current,                            :
                  Appellants        :

# O R D E R

AND NOW, this 11ᵗʰ day of July, 2023, the December 1, 2021 order of the Allegheny County (County) Court of Common Pleas is hereby REVERSED. The County is directed to produce the records responsive to the December 23, 2020 request submitted by Brittany Hailer and Pittsburgh Current pursuant to the Right-to-Know Law.[1]

_____
ELLEN CEISLER, Judge

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Allegheny County                          :
                                          :
            v.                            : No. 1469 C.D. 2021
                                          : Argued:  May 10, 2023
Brittany Hailer and Pittsburgh            :
Current,                                  :
                                          :
                     Appellants           :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE STACY WALLACE, Judge


DISSENTING OPINION
BY JUDGE WOJCIK                                      FILED:  July 11, 2023


        I respectfully dissent.

        There is simply no provision in the Coroner's Act[1] that requires the

Allegheny County Office of the Medical Examiner to disclose autopsy and

toxicology records to the general public at any time.[2]  As a result, there is no conflict

_____

        [1] Act of August 9, 1955, P.L. 323, *as amended*, 16 P.S. §§1231–1260.

        [2] Contrary to the Majority's assertion, treating the Allegheny County Medical Examiner's
Office records differently from other Medical Examiner's Offices in the Commonwealth based on
county classification does not lead to an absurd result.  Indeed, the County Records Act of 1963,
Act of August 14, 1963 (County Records Act), P.L. 839, No. 407, *as amended*, 16 P.S. §§13001-
13006, also treats the records retained by the various county offices throughout the Commonwealth
**(Footnote continued on next page…)**

between Section 708(b)(20) of the Right-to-Know Law (RTKL)[3] and the Coroner's Act, so Section 708(b)(20) controls and exempts the requested records herein from disclosure under the RTKL.[4]

---

differently based on county classification. As the Official Note to Rule 507 of the Pennsylvania Rules of Judicial Administration (Pa.R.J.A.) explains:

> The record retention schedules promulgated by the County Records Committee [under the County Records Act] are only applicable to county offices of counties of the second through eighth classes, since the County Records Act, as amended, is only applicable to counties of the second through eighth classes. Accordingly, none of the county offices of the counties of the first class are governed by the County Records Act. Nonetheless, many of the county offices of the counties of the first class which support the Unified Judicial System unofficially utilize the record retention schedules promulgated by the County Records Committee in disposing official records within their control. In order to foster uniformity among these offices, [Pa.R.J.A. 507(a)(2)] was added, specifically listing the offices within the counties of the first class which must henceforth comply with the record retention schedules promulgated by the County Records Committee.

Pa.R.J.A. 507, Official Note. Likewise, it is patently within the purview of the General Assembly to treat the records of the various Medical Examiner's Offices throughout the Commonwealth differently under the Coroner's Act based on the differing county classifications. *See, e.g.*, article III, section 20 of the Pennsylvania Constitution, Pa. Const. art. III, §20 ("The Legislature shall have power to classify counties . . . according to population, and all laws passed relating to each class . . . shall be deemed general legislation within the meaning of this Constitution."); *Commonwealth ex rel. Kelley v. Cantrell*, 193 A. 655, 661 (Pa. 1937) ("Classification is primarily a legislative question. For us now to hold invalid the classification adopted in the act before us would be to disregard completely [article III, section 20], which was adopted in order to permit the enactment of legislation such as this--framed to meet the exigencies peculiar to one of the various classes of counties within the Commonwealth.").

[3] Act of February 14, 2008, P.L. 6, 65 P.S. §67.708(b)(20).

[4] It is in this respect that the instant case may be distinguished from *Hearst Television, Inc. v. Norris*, 54 A.3d 23 (Pa. 2012), and *Penn Jersey Advance, Inc. v. Grim*, 962 A.2d 632 (Pa. 2009).

Accordingly, unlike the Majority, I would affirm the order of the Allegheny County Court of Common Pleas in this case.[5]

_____
MICHAEL H. WOJCIK, Judge

---

[5] It is well settled that this Court may affirm the trial court's order on any basis appearing in the record. *Feldman v. Lafayette Green Condominium Association*, 806 A.2d 497, 502 n.3 (Pa. Cmwlth. 2002).